**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | **CRIMINAL NO. 20-328** |
| **v.** | **:** | |
| **LUIS PEREZ RODRIGUEZ**<br>**a/k/a "LuNTiph"** | **:** | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by its undersigned attorneys, Jacqueline C. Romero, United States Attorney for the Eastern District of Pennsylvania, and Brittany Jones, Assistant United States Attorney for the district, respectfully submits this sentencing memorandum regarding defendant Luis Perez Rodriguez.

On September 23, 2020, the defendant was charged by indictment with four counts of manufacturing child pornography in violation of 18 U.S.C. §2251(a)(1) and four counts of distribution of child pornography in violation of 18 U.S.C. §2252 (a)(2). The charges arise from the defendant's participation in online chats over the mobile application Kik in which he sexually abused two minor girls in his care, photographed the abuse, and sent the photos to other chat participants. He also discussed planning the continued sexual abuse of children by himself and other chat participants.

On December 8, 2021, the defendant pled guilty to all counts of the indictment. There is no plea agreement between the Government and the defendant. The defendant's sentencing Guideline range in this case calls for life imprisonment but is limited to a life-equivalent

sentence of 2,400 months' imprisonment by the statutory maximum sentences for each offense. For the reasons below the Government seeks a Guideline sentence.

## I.  FACTUAL AND PROCEDURAL BACKGROUND[1]

On April 23, 2020, an FBI Under Cover Employee ("UCE") was in a Kik group[2], when an individual utilizing Kik ID:  LuNTiph, Kik display name: Lu R, later identified as the defendant, Luis Perez-Rodriguez, was added to the group by another user (User 1). After joining the room, User 1[3] posted a video and an image and stated that they were "Lu's" images and that they were taken live[4]. The images and video were of a clothed 10-year-old minor girl, later identified as Minor 1, a child who was in the defendant's care.[5]

After the images were posted, the defendant sent the message "Thanks glad y'all like." The UCE then asked the defendant in the Kik chat if he was "Active or just perv?" to which the defendant responded "Not sure what'd you call it lol. Kinda new but have discovered she sleeps very heavily." These terms are used to describe persons who are actively engaging in sexual

---

1. The facts in this memorandum are taken from the facts in the Government's Change of Plea memorandum. The Defendant had no objection to these facts when he pled guilty on December 8, 2021. These facts are also contained in the PSR ¶¶ 7-31, to which the defendant has lodged no objection.

2. Kik Messenger (hereinafter "Kik") is a mobile application designed for chatting or messaging owned and operated by Kik Interactive, Inc.  A user downloads the application to a mobile phone, computer, or other digital device via a service such as the iOS App Store, Google Play Store, Apple iTunes, or another similar provider. Once the application is downloaded and installed, the user is prompted to create an account and username. The user also creates a display name, which is a name that other users see when transmitting messages back and forth. Once the user has created an account, the user is able to locate other users via a search feature.  Kik has a free messenger application which provides cross-platform smartphone instant messaging.  Through Kik, users can share text-based conversation, photos, videos, and other forms of rich media.  Users of Kik can use Kik messenger to engage in multi-user group chats.

3. User 1, whose identity is known to law enforcement but omitted here to protect the ongoing investigation, was arrested in July after he flew from Media, Pennsylvania to the Dallas, Texas area with the plan to have sex with a person he believed would be the UCE's 10-year-old daughter. Charges are pending in the Northern District of Texas.

4. A live image and/or video is an image taken within the Kik application at the time they were sent.

5. The identity of Minor 1, and her relationship to the defendant, are known to the Government but omitted from this public filing to protect the identity of the child.

activity with minors ("active") and others who have an interest in sexual activity with minors, but who are not physically doing so ("just perv").

On April 24, 2020, defendant posted another clothed picture of Minor 1. Defendant then commented to others in the group that he was waiting for Minor 1 to go to sleep, commenting that it was "even easier cuz they both sleep heavy lol." The defendant also advised the group that he lives in the eastern part of the USA.

**Private Kik group chats with the defendant**

On April 24, 2020, the UCE was added to a private Kik group where the defendant, User 1, and another user, (User 2) were members. On April 26, 2020, the defendant posted two live images of Minor 1. In these images the child is wearing what appears to be a blue colored top and black pants with a white stripe. The child appears to be standing in the same kitchen area. On April 27, 2020, at approximately 6:53 a.m. the defendant posted a live image which depicted what appears to be an "up the skirt" photo of a minor girl wearing pink colored underwear with undetermined accents. Following this post, User1 sent the message: "Mmmmm hot bottom is up (wink emoji)."

On **April 28, 2020,** at approximately 10:11 a.m., defendant posted two images of Minor 2, which are described as follows:

> **Count 2 – manufacturing child pornography and Count 6 – distribution/ attempted distribution of child pornography -** depicts a nude, prepubescent female child. The child appears to have her legs in the air and is exposing her genitalia to the camera. The child's diaper can be seen beneath her. The child was later identified as

Minor 2[6], a 3-year-old girl in the care of the defendant.

**<u>Count 3 – manufacturing child pornography and Count 7 – distribution of child pornography</u>**- depicts a nude, prepubescent female child with her legs spread (Minor 2). What appears to be an adult male has his hands on the child's genitalia, spreading her vagina with his fingers.

The UCE continued to chat privately with User 1 about the defendant. He confirmed to the UCE the relationship and identity of both girls whose images he distributed. He also sent messages to the UCE of images and videos the defendant had posted before the UCE joined the group.

On **April 30, 2020,** at approximately the defendant left the "4 way" Kik group. At approximately 6:21 a.m. User 1 sent the following messages to the Kik group:

> User 1: Lu split
>
> Wife snoopin on my phone last two days. I'll message u back when I think I'm good. Don't want her seeing the title of the group n all that chats.
>
> That was from Lu [referring to the defendant]

The UCE sent messages to User 1 asking about the defendant. User 1 advised that the defendant sent him "lots of live stuff," that the defendant would be back and that he had four females living in his house. The UCE told User 1 that the defendant had not sent the UCE anything, and User 1 responded by sending a screen shot of images that were posted in the "4 way" Kik group prior to UCE being added to the group. The screen shot included a live image and a video.

---

6. The identity of minor 2 and her relationship to the defendant is known to the Government but omitted from this public filing to protect the identity of the child.

The image depicts Minor 1. The child appeared to be sleeping and what appeared to be tan colored pillows and a brown/red colored blanket could be seen. An adult male was lying beside her, exposing his penis and testicles.

**Count 4 – manufacturing child pornography and Count 8 – distribution/ attempted distribution of child pornography -**The video depicts the same child (Minor 1). The adult male, who appeared to be wearing blue colored underwear and grey colored shorts, is holding his erect penis in his hand and is masturbating over the child's head and face. He then rubs his penis on the child's face and rubs a clear substance believed to be semen onto her face. Other people and children can be heard in the background.

**Private Chats between the defendant and User 1**

User 1 was arrested in the Northern District of Texas. He flew to Texas to have sex with a 10-year-old. The meeting was arranged by the UCE. His phone was seized and examined. The examination of his phone revealed a private chat with the defendant running from April 23, 2020, through April 30, 2020.

The chats began with the defendant discussing sexual "threesomes" that he claimed he and his wife used Kik to arrange. They then segued into discussing child exploitation, and the defendant posted clothed photos of Minor 1. They then discussed ways to abuse Minor 1 together and made plans to meet up to do so.

**April 24, 2020**

User 1: Take her mouth first for damn sure.

Defendant: Well of course lol. Love depositing cum in her mouth while she's asleep. It's like she knows when I'm done cuz she'll turn her head and swallow it up and get comfy again.

User 1: Mmmm I'm all over that

User 1: U Allentown ish?

Defendant: Closer to Dorney Park

User 1: was there last summer

Defendant: Nice probably seen my lil one at the water park.

User 1: Haha if so I woulda tried getting hands on her

Defendant: Mmmm hot. I wanna slut her out the way I do my wife

User 1: It can happen haha

User 1: Bet her friends dads dream of playin on her

Defendant: I bet would love to meet others nearby

The defendant and User 1 then began discussing the defendant's wife, during which the defendant sent several photos of her in various stages of undress and close ups of her vagina. They then turned back to talking about Minor 1. The defendant sent several photos of her in pajamas walking around. User 1 sent feedback after receiving the images, such as "want on that hot little bod of hers," "Hope we get some fun on her," "She'll understand right quick what her purpose is bud." The defendant also gave User 1 permission to share the photos of Minor 1. They continued to talk about sexually abusing Minor 1 and meeting up together.

User 1: I def hope we all get together.

Defendant: Me too definitely need to drug her tho. Moving a lot lately

User 1: U can come here or I visit over there.

Defendant: caught me jerkin my cock over her face. Sleepily said hi.

Defendant: Not yet. You'll see lol.

Defendant: Better luck visit here. Would have to drug em both.

User 1: Gotcha and yup cool.

User 1: You think about and let me know

Defendant: Will do

User 1: You'd prob love seeing a guy playing on [ relationship omitted]. Fuckin hot

Defendant: I'd probably cum in my hand bro

User 1: Haha

User 1: I'll cum down her throat

Defendant: Mmm please!!!

User 1: Cute face to mouth fuck for sure man

Defendant: I try to mouth fuck her nitely. Maybe she'll start secretly loving cum cuz of how much she swallows every night

User 1: Dude her mouth knows

User 1: It's built for cum

Defendant: Mmm love the thought

User 1: Absolutely man

User 1: I def hope to get in her mouth

User 1: strip her right down

Defendant: If we can drug her hell yes

User 1: Ya man perfect

Defendant sent an image, described as follows:

**Count 1 – manufacturing child pornography and Count 5 – Distribution/ attempted distribution** - image depicting Minor 1 laying on a bed, under a brown blanket and wearing a light green shirt. She appears to be sleeping. An adult male is next to her touching his penis to her lips.

**April 26, 2020**

The defendant disclosed he had a 3-year-old girl in his care and asked for tips on how to sexually assault her as well.

Defendant: Mmm got a 3 yr old I'm waiting a couple years for. Any tips

User 1: U have a [omitted] 3 u mean?

Defendant: yea

User 1: Mmmmm nice

User 1: Get her use to cock in her face

Defendant: How? When?

User 1: And her legs spread

User 1: Now

User 1: Best time to start

Defendant: Really No idea bro

User 1: Got her pics/vids?

Defendant then sent a clothed photo of (Minor 2) in a pink dress with a pacifier in her mouth.

User 1: Mmmmm delicious nugget

Defendant sent another clothed photo of (Minor 2).

User 1: Fun holes on her for sure

Defendant: Think so? So just have her like play with my dick or touch it?

User 1: yup yup

User 1: Sleeping play too

Defendant: What u mean?

User 1: When she's asleep play

Defendant: Gotcha her mouth

User 1: Anywhere u want

Defendant: Ok. Think she'll be into it as she gets older?

User 1: Sit her down on the 10's face mmmm

Defendant: Now that's fucking hot

User 1: Ya man I'd bet very into it as she grows

Defendant: Rub her butthole n puss in the 10's face mmmmm

Defendant: Haha. Imagine if I walked in and caught that happening on their own. I'd so blackmail the shit outa them both.

User 1: Maybe make her piss

User 1: Yup blackmail the fuck out of them

Defendant: I swear every female [omitted] comes out with fat pussies. They all got fat slits.

User 1: Mmmm

User 1: Bet the 3 has nice Chubb cunt hole

Defendant: Yea it is. U want pics? That'll probably be easy AF

User 1: Yup yup pls

User 1: Vid the hole open

Defendant: Definitely will do bro. Mon- fri is easier cuz grandma go to work and wife passes out for a few hours. So it's just me and the two girls. I'll entertain the 10 on the computer while I vid 3[7]

They continued to discuss User 1 coming over to help the defendant sexually abuse both Minor 1 and Minor 2.

**April 28, 2020**

Defendant: Lol I'll show anything. It don't matter to me. I chat with u cuz I know u and me have the same likes. Not sure about everyone else

User 1: Ya man that's very cool and yup we do

User 1: The others def do also

Defendant: Even with 3?

User 1: Yes even

Defendant: Mmm those tits

Defendant: Nice good to know

User 1: Ya man for sure

Defendant: Cool I'll be here

Defendant: Lol

User 1: How's many chickies there today

Defendant: All fuckin awake smh

User 1: Wth bitches

User 1: Lol

Defendant then sent an image (see above, image of Minor 2 as charged in Counts Two

7. This chat took place on a Sunday.

and Six of the indictment)

Defendant then sent another image (see above, image of Minor 2 as charged in Counts Three and Seven of the indictment)

User 1: Mmmmm look at gash open up

User 1: Nice fat cunt goin there

Defendant: Like that

User 1: yup yup

User 1: Little fuck hole

Defendant: Yes it is

User 1: Gonna be lots of loads dumping in that

Defendant: Mmmm we can only hope

User 1: Mmmm yup

User 1: I'd shoot right in holding that hole open

Defendant: Mmm hot

Defendant: I rub her clit and she giggled

User 1: Yup

User 1: Finding out her purpose

Defendant: lol

User 1: On her back

They then continued to discuss "cumming" in 3-year old Minor 2's "holes" and getting the 10-year old, Minor 1, to clean up the ejaculate "from every fold." User 1 told the defendant to share her in the 4-chat too.

The defendant abruptly left the chat on April 30, 2020, and User 1 inquired as follows:

User 1: Dude why u leave

Defendant: Wifey snoopin on my phone last two days. I'll message u back when I think I'm good. Don't want her seeing title of the group n all the chats

User 1: Ook bud I got ya

Defendant: B safe brotha

User 1: Come back ok

Defendant: Definitely bro

User 1: let me know when to visit

Defendant: Haha for sure

**Execution of Search of Residence**

Records obtained from Kik and RCN Telecom Services, and Subsentio Legal Compliance Service, the defendant's electronic service provider, linked the IP addresses used to engage in these crimes to the defendant at his residence in Allentown, Pennsylvania. On May 1, 2020, the FBI applied for and was granted a federal search warrant, (20-699-M), to search the defendant's residence in Allentown. The search warrant was executed that same day, May 1, 2020.

**Interview of Defendant**

During the execution of the search warrant the defendant was present and agreed to be interviewed by agents. The interview took place outside of his residence in Allentown, PA. The defendant was advised of his Miranda rights, which he waived and agreed to speak with agents.

Defendant confirmed the "LuNTiph" Kik account was his. He admitted to chatting with other users about "kid stuff". He advised that he used his iPhone to access the Kik messenger app. He admitted to videoing himself masturbating over Minor 1 and putting his penis on her

face. He further admitted he sent those images over Kik. He claimed he only participated in those chats the last week. Defendant claimed that the close-up photos of Minor 2's anus and vagina were taken when she had diaper rash and were uploaded by accident, as he had intended to share more nude photos of his wife. Lastly, the defendant stated that he started to feel "sick" about what he had done, and then deleted those chats from his phone.

**Examination of Defendant's Cell Phone**

The defendant's Apple iPhone was seized during his arrest. A separate federal search warrant (20-717-M) was obtained because it was located outside of the home at the time of the execution of the search warrant on the residence. The forensic examination located the "LuNTiph" Kik messenger profile. The chats between the UCE and the defendant were not located on the phone.[8] Several clothed pictures and videos of both of child victims were recovered.

On September 23, 2020, defendant Luis Perez Rodriguez was charged by a grand jury sitting in the Eastern District of Pennsylvania in Counts One through Four with Manufacturing Child Pornography, in violation of 18 U.S.C. § 2251(a)(1) and in Counts Five through Eight with Distribution of Child Pornography, in violation of 18 U.S.C. §2252 (a)(2).

| **Count** | **Date** | **Child** | **Description** |
|---|---|---|---|
| 1 - manufacture | April 2020 | Minor 1 | Image of child laying on bed with male touching his penis to her lips |
| 2 - manufacture | April 2020 | Minor 2 | Image close up of child's genitals with her diaper removed |
| 3 - manufacture | April 2020 | Minor 2 | Image close up of child's genitals with adult fingers |

8. The defendant told law enforcement during his statement that he deleted the chats because he was afraid of being caught. Kik does not save any backups of these chats, and they cannot be recovered from the defendant's phone.

| | | | |
|---|---|---|---|
| | | | spreading her vagina |
| 4 - manufacture | April 2020 | Minor 1 | Video of child lying on bed with male masturbating and spreading semen onto child's face |
| 5 - distribution | April 24, 2020 | Minor 1 | [Same image as Count 1] |
| 6 - distribution | April 28, 2020 | Minor 2 | [Same image as Count 2] |
| 7 - distribution | April 28, 2020 | Minor 2 | [Same image as Count 3] |
| 8 - distribution | Between April 23, 2020 and April 28, 2020 | Minor 1 | [Same image as Count 4] |

On December 8, 2021, the defendant pled guilty to all counts of the indictment as charged. There is no agreement between the government and the defendant concerning the sentence to be imposed.

## II. APPLICABLE LAW

The Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.
>
> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force.
>
> (3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

*United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted) (citing *United States v. King*, 454 F.3d 187, 194, 196 (3d Cir.

2006). In calculating the guideline range, this Court must make findings pertinent to the guideline calculation by applying the preponderance of the evidence standard, in the same fashion as was employed prior to the *Booker* decision. *United States v. Grier*, 475 F.3d 556 (3d Cir. 2007) (en banc). The failure to properly calculate the advisory guideline range will rarely be harmless error. *United States v. Langford*, 516 F.3d 205, 214-18 (3d Cir. 2008).

At the third step of the sentencing process, the Court must consider the advisory guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority."); *United States v. Flores-Mejia*, 2014 WL 3450938, *2 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

As detailed below, the government believes that a consideration of the advisory Guidelines range and the Section 3553(a) factors support a Guideline sentence.

## III. SENTENCING CALCULATION

### A. Statutory Maximum Sentences

**Manufacturing/Attempted Manufacture of Child Pornography, 18 U.S.C. § 2251(a)(1) (4 counts)**

For each count:  30 years' incarceration with a 15-year mandatory minimum term, 5 years up to a lifetime of supervised release, a $250,000 fine, a $100 special assessment, mandatory restitution pursuant to 18 U.S.C. § 2259, and if found to be non-indigent, an additional, mandatory $5,000 assessment must be imposed pursuant to 18 U.S.C. § 3014, and an additional special assessment of up to $50,000 pursuant to 18 U.S.C. § 2259A(a)(3).  Forfeiture of all property used in the offenses also may be ordered.

**Distribution/Attempted Distribution of Child Pornography, 18 U.S.C. § 2252(a)(2), (b)(1) (4 counts)**

For each count:  20 years' incarceration, with a 5-year mandatory minimum term, a minimum 5-year term up to a lifetime of supervised release, a $250,000 fine, a $100 special assessment, mandatory minimum restitution of at least $3,000 per victim pursuant to 18 U.S.C. § 2259(b)(2)(B), and if found to be non-indigent, an additional mandatory $5,000 special assessment must be imposed pursuant to 18 U.S.C. § 3014, and an additional special assessment of up to $35,000 pursuant to 18 U.S.C. § 2259A(a)(2).  Forfeiture of all property used in the offenses also may be ordered.

**Total Maximum Penalty**:

200 years' incarceration, which includes a minimum mandatory term of 15 years, 5 years up to a lifetime of supervised release, a $2,000,000 fine, mandatory restitution, and for the distribution counts a minimum mandatory restitution of at least $3,000 per victim, an $800 special assessment, and if found to be non-indigent, and additional mandatory $40,000 special assessment must be imposed, and up to $340,000 in additional special assessments.  Forfeiture of all property used in the offenses also may be ordered.

### B. Sentencing Guidelines Calculation[9]

The Government agrees with the Sentencing Guidelines calculated by the United States Probation Office as follow: Counts 1, 4, 5, 8 are grouped together because they involve the same victim (Minor 1). Counts 2, 3, 6 and 7 are grouped together because they involve the same victim (Minor 2). Group 1 manufacturing and distribution of child pornography (Minor 1), the base offense level is 32 pursuant to USSG §2G2.1, four levels are added because Minor 1 was 10 years old at the time pursuant to USSG §2G2.1(b)(1)(A), two levels are added because the defendant's crimes involved sexual contact pursuant to USSG §2G2.1(b)(2)(A), two levels are added for distribution pursuant to USSG §2G2.1(b)(3), two levels are added because the defendant was a guardian of Minor 1 pursuant to USSG §2G2.1(b)(5), two levels are added because Minor 1 was a vulnerable victim at the time of the defendant's abuse pursuant to USSG §3A.1(b)(1). The subtotal for Group 1 is 44.

For Group 2 - manufacturing and distribution of child pornography (Minor 2) - the base offense level is 32 pursuant to USSG §2G2.1(a), four levels are added because Minor 2 was three years old at the time pursuant to USSG §2G2.1(b)(1)(A), two levels are added for sexual contact pursuant to USSG §2G2.1(b)(2)(A), two levels are added for distribution pursuant to USSG §2G2.1 (b)(3), four levels are added because Minor 2 was a toddler pursuant to USSG §2G2.1(b)(4)(B), two levels are added because the defendant was a guardian of Minor 2 pursuant to USSG §2G2.1(b)(5), two levels are added for vulnerable victim status pursuant to USSG §3A1.1(b)(1). The adjusted offense level for Group 2 is 48.

The multiple count adjustment is 2 pursuant to USSG §3D1.4(a)(b) and (c). The multiple count adjustment (2) is added to the highest offense level (48) for a combined adjusted offense

9 The sentencing Guidelines as calculated by the United States Probation Office appear in PSR¶ 41-76, 106.

level of 50 pursuant to USSG §4B1.5(b)(1). The defendant engaged in a pattern of sexual abuse and a 5 level increase is applicable pursuant to USSG §4B1.5(b)(1). The defendant has accepted responsibility and is eligible for a total 3 level decrease pursuant to USSG §3E1.1(a),(b). The final total offense level is therefore 52. The defendant's Criminal History Category is I, resulting in a Guideline range of life imprisonment. However, because life imprisonment exceeds the statutory maximums on each of the counts, the effective Guideline range is 2,400 months' incarceration.

## IV.   ANALYSIS

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that a Guideline sentence is warranted.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among

defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

### A. Consideration of the 3553(a) Factors

#### 1. The nature and circumstances of the offense

The production of child pornography is undisputedly a grave offense. As the Supreme Court has explained, "[c]hild pornography harms and debases the most defenseless of our citizens. Both the State and Federal Government have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet." *United States v. Williams*, 553 U.S. 285, 307 (2008). The Supreme Court has clearly recognized the harm to these children, noting that the "materials produced are a permanent record of the children's participation…" in the abuse. *See New York v. Ferber*, 458 U.S. 747, 759 (1982); *Osborne v. Ohio*, 495 U.S. 103, 111 (1990) ("The pornography's continued existence causes the child victims continuing harm by haunting the children for years to come.")

The nature and circumstances of the defendant's crimes warrant a life-equivalent sentence. First, his abuse of these children as part of his crimes was horrific. He spread open the vagina of Minor 2 to display her prepubescent genitals to photograph. He Masturbated over the face of Minor 1 while she slept and videoed it.

Second, his abuse of the trusted relationship he had with each child – and their mother – also warrants a severe sentence. These children loved the defendant and shared a special relationship with him. They looked up to him. They obeyed him. He abused the sacred bond he shared with each child to satisfy his own deviant sexual desires. Their ability to establish a sense of their own worth, and equally significant, healthy relationships with others, is forever impacted by the defendant's choice to violate their sacred relationship.

Third, his choice of victims also warrants consideration here. He chose these victims because he had almost exclusive access to them. They were so young and trusting, and completely reliant on this defendant to provide for their care and well-being. Their young ages – just 3 and 10 years old – is another aggravating circumstance of the defendant's crimes that warrants significant punishment.

Fourth, the defendant's distribution of these images in an online chat group comprised of other child sex offenders who were dedicated to the sexual abuse and exploitation of children is a horrific aspect of his crimes that warrants a Guideline sentence. The sexual abuse of these girls is forever memorialized because the defendant chose to spread it out for the whole world to see – and more significantly, for other sex offenders to gratify themselves to. These images depict these girls' faces, and their most private parts of their bodies. Their images can never be retrieved, so that their victimization will continue throughout their lifetimes. The defendant should be subject to the same punishment, his distribution of his self-produced child pornographic images and videos warrants a guideline sentence. Every single time those images are shared there is harm to these minor girls and the abuse continues. They will never be completely free from this abuse.

Fifth, the defendant's solicitation of "tips" from other child sex offenders on how to continue and further his sexual abuse is completely unaccounted for in his Guideline calculation, and further warrants a significant sentence of incarceration. He didn't just make the images and share them online he solicited tips on how to continue sexually abusing the girls and discussed plans to invite others from the group to participate in abuse. He went as far as to share his general location and discuss the schedules of when others may be around that would interrupt his abuse. It's clear from his chats, when no one was looking, the defendant had a clear interest in

sexual abusing children and continuing to participate and escalate his abuse of minors. A guideline sentence is warrant for the egregious nature of the defendant's crimes.

The defendant's crimes will have a massive impact on the victims, their mother, and the entire family for years to come. As the mother of the victims writes in her impact statement. Minor 1 has struggled immensely since the abuse. She was playing the saxophone and stopped playing for over a year because she lost the drive to continue to participate in the activities she loved since the abuse. Minor 1's mom also had to have all her daughters' teachers at school switched to ensure she only had female teachers because she is distrustful of all men after her abuse. Minor 2 has also struggled and needed to be removed from daycare following the abuse by the defendant.

The punishment for these offenses must consider how he has changed the lives of his victims forever. The mother of the victims puts it best when she writes:

> "Luis is nothing but a narcissistic monster. He will do anything to get what he wants no matter who it hurts. He looks out only for himself that's clear by he's actions. He has no respect for anyone's boundaries not even for one's he said he had himself. To hear the things, he did to my girls I have no words to describe what I feel. I still fear now leaving my girls with anyone and that includes family.
>
> The charges Luis has plead guilty to are some of the most horrible things a man/ [relationship omitted] could do to the two girls he called [relationship omitted]. I feel that Luis does deserve the maximum sentence for what he's done, who knows how much further Luis would have taken this if he wasn't caught."
>
> *See* Victim Impact Statement, Govt. Exhibit 1.

A Guidelines sentence is appropriate in this case and would properly account for the horrific abuse of these young victims, and their continued exploitation.

**2. <u>The history and characteristics of the defendant</u>**

The defendant is 33 years old. He grew up in an intact family that provided for his needs. He describes his parents' relationship as "steady, supportive and stable". PSR ¶ 81. The

defendant further described his childhood as “almost like a fairytale” and remarked to the USPO that he was “fortunate” and had great memories of his childhood and adolescence. PSR ¶ 83. He reports that his parents were always supportive of his brother and himself. PSR ¶ 83. The defendant graduated high school in 2011. PSR ¶ 96. The defendant was able to keep himself employed in various jobs such as warehouse work and order checker work up until six months before the instant offense when he was injured while working as a “order selector” at C& S Wholesale Grocers. The defendant was in the process of applying disability benefits before his incarceration on this offense. PSR ¶¶98-100. The defendant reports never having had a history of mental illness or psychological disorders. PSR ¶92. The defendant does report using steroids on a weekly basis for approximately one year prior to this offense and daily marijuana use for several years. PSR ¶94, 95. Further the defendant reported to probation snorting cocaine for about a month prior to the instant offense. PSR¶95.

Despite having a tremendous supportive background, the defendant has chosen to participate in one of the most horrendous crimes possible, the sexual abuse of two young girls in his care. He further photographed and videoed the abuse and sent it to strangers online. Not only did he share his own self-produced child pornography with the world online, but he also actively solicited tips on how to keep abusing the minor girls and started planning to have a chat member participate in his abuse and molestation of the girls.

When confronted by law enforcement at the scene of the search warrant, he minimized his crimes. For example, he claimed to have “accidentally” uploaded the photos of Minor 2, and further, tried to convince agents that the photos were not sexual in nature, but instead were taken because the child had “diaper rash.” Such self-serving statements fly in the face of the chats authored by the defendant, in which he discussed sexually abusing both girls with other child sex

offenders. He specifically agreed to take photos of Minor 2's vagina once they were requested from another chat participant. These clearly deceptive statements, made to law enforcement at a time when the defendant had the opportunity to come clean and take full responsibility, speak volumes as to his true character.

Lastly, although this is the defendant's first criminal conviction, the defendant committed these crimes on multiple occasions on two separate victims in his care. The egregiousness of his crimes calls for a Guideline sentence. The defendant is similarly situated to the vast majority of federal child pornography offenders, who also have no prior records at the time that they are sentenced. *See U.S. Sentencing Commission, Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System 320 (2011)* available at http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional_Testimony_and_Reports/Mandatory_Minimum_Penalties/20111031_RtC_Mandatory_Minimum.cfm. The Guidelines already reflect the fact that the defendant has no prior criminal record. *See, e.g., United States v. Borho,* 485 F.3d 904 (6th Cir. 2007) (There were no "extraordinary circumstances" that justified a decreased sentence based on, among other considerations, the defendant's lack of a criminal history, lack of evidence that he had ever molested a child, and a sex offender risk assessment that opined that the defendant was at low risk for re-offending.); *United States v. Peterson*, 83 Fed.App'x. 150 (8th Cir. 2003) (appeals court reversed District Court's downward departure based on the low likelihood for re-offense and susceptibility to abuse in prison, as the first factor was already accounted for in the Guidelines and the second factor was inapplicable to the facts of the case). The defendant's lack of a prior record should not provide any basis to vary from the Guideline range.

Significantly, a review of the sentences imposed in this District for the same offenses committed by this defendant - production of child pornography - shows that most defendants were "first-time offenders." Despite the fact that these first-time offenders entered guilty pleas, most of the sentences imposed in this District were still within or near their advisory Guideline ranges. **Most significant, at least five of the first-time offenders in the EDPA were sentenced to life imprisonment or its equivalent, based, in part, on the fact that they had molested their victims as part of their crimes**. *See United States v. Maffei* (Cr. No. 16-511) (Goldberg, J.) (**statutory maximum sentence of 90 years' imprisonment** imposed on first-time offender defendant who manufactured two images of child pornography but sexually abused his 7-year old victim during the commission of his crimes); *United States v. Krapf* (14-36) (Sanchez, J.) (**sentence of life imprisonment** for first-time offender with Guideline range of life where defendant molested his victims before photographing them); *United States v. Jamieson* (17-113-01) (Pratter, J.) (**sentence of 100 years' incarceration** imposed on Guidelines of life imprisonment for offender who sexually abused autistic teenage stepdaughter with his co-defendant and produced and distributed images of her abuse); *United States v. Mazer* (12-546) (DuBois, J.) (**sentence of 720 months' incarceration** (statutory maximum) imposed on Guidelines of life imprisonment for first-time offender who committed hands-on abuse); *United States v. Worman* (07-40) (Stengel, J.) (**sentence of 120 years' incarceration** with Guidelines of life imprisonment equivalent, for first-time offender who also committed hands-on abuse). *See also United States v. John Brown* (17-113-2) (Pratter, J.) (sentence of 624 months' incarceration with Guidelines of life imprisonment for 21-year-old defendant who sexually abused teenage victim with the victim's stepfather and at his instruction); *United States v. Perez Colon* (18-108) (Pratter, J.) (sentence of 55 years' imprisonment on Guidelines of life for 27-year old defendant's

sexual abuse of a 2-year old in his care and manufacture of images); *United States v. Jaquier Fishburn* (16-087) (Pappert, J.) (sentence of 360 months' incarceration on Guidelines of 324 to 405 months for first-time offender who was 25 years old at the time of sentencing but who had sexually molested victim); *United States v. James Donaghy* (17-39) (Bartle, J.) (sentence of 180 months' incarceration on Guidelines of 180 to 210 months, for first-time offender who was 35 years old at the time of sentencing, but whose crimes were limited to the Internet); *United States v. Quasim Cunningham* (15-170) (Diamond, J.) (sentence of 240 months' incarceration on Guidelines of 235 to 293 months for 29-year-old first-time offender whose crimes were limited to the Internet); *United States v. Jose Gonzalez* (14-448) (Padova, J.) (sentence of 420 months' incarceration imposed on Guidelines of 360 months to life for first-time offender who abused two-year-old); *United States v. John Corcoran* (15-132) (Baylson, J.) (sentence of 336 months imposed on Guidelines of 292 to 365 months' imprisonment, 20-year old first-time offender); *United States v. Mark Wilkens* (15-520) (Rufe, J.) (sentence of 180 months' incarceration imposed on Guidelines of 292 to 365 months for 56-year-old first-time offender who *did not* commit hands-on sexual abuse); *United States v. Kevin Rebbie* (15-300) (Quinones, J.) (sentence of 240 months' incarceration imposed on Guidelines of 210 to 262 months for first-time offender; no hands-on sexual abuse of victim); *United States v. Becktold* (14-30) (Sanchez, J.) (210 months' incarceration imposed with Guideline range of 210 to 262 months; first-time offender; no hands-on sexual abuse); *United States v. Townsend* (13-625) (Dalzell, J.) (sentence of 262 months' incarceration imposed on Guidelines of 210 to 262 months); *United States v. Knappenberger* (Gardner, J.) (11-316) (sentence of 420 months' incarceration imposed with Guidelines of life imprisonment); *United States v. Prawdzik* (07-40) (Stengel, J.) (sentence of 360 months imposed with Guidelines of 210 to 262 months; first-time offender; sexually abused

victims); *United States v. Jackson* (07-40) (Stengel, J.) (sentence of 300 months imposed with Guidelines of 360 months' incarceration; first-time offender).

The purpose of including these cases as part of the Government's sentencing memorandum is to demonstrate that Guideline range sentences are regularly imposed for "first-time" offenders, like defendant Perez Rodriguez, who sexually abuse their child victims.

The defense in their sentencing memorandum requests that this Court grant a downward variance and sentence this defendant to the mandatory minimum term, that is just 15 years' incarceration. In part, the defendant relies upon the opinion of his hired expert, who performed a psychosexual evaluation for purposes of mitigating the defendant's sentence. Significantly, the defendant's own expert opined that he is at "moderate risk" to reoffend, despite the fact that he had sexually abused both girls as part of his crimes[10]. In rendering that opinion, the defense expert accepted the defendant's denial of sexual attraction to children at face value, without rendering tests that would likely have resulted in finding otherwise11. The defense expert did not review the entirety of the evidence in this case – he did not view the images, and, inexplicably, it appears he did not review the entirety of the vile chats in which the defendant engaged with other child sex offenders at a time when he believed nobody was watching, and he was free to reveal his true self. Had the defense expert reviewed these chats in their entirety, they would have led to only one conclusion – that the defendant's true sexual interest is in abusing children.[12] The fact that the defendant provided contrary information to his own expert, as recently as just a few months ago, should cause this Court great concern.

10. *See* Datillio evaluation at 15.
11. *See* Datillio evaluation at 11.
12. The defense expert admits, however, that the chats he reviewed were "very disturbing." *See* Datillio evaluation at 9.

Lastly, the defense expert maintains that the defendant is amenable to treatment, and only mitigates his risk to reoffend if he continues in treatment; otherwise, he remains at "moderate risk." Regardless of what risk of reoffending this defendant is classified as, the Guideline range in this case is based on the factors of his present crime and should not be decreased based on some prediction of possible future criminal behavior. *See, e.g., United States v. Goldberg*, 295 F.3d 1133 (10th Cir. 2002) (defendant's lack of prior record, and low risk of recidivism are not valid grounds for downward departure because those factors are all taken into account in the Guidelines themselves); *Borho,* 485 F.3d 904. There is nothing in the egregious offenses committed by this defendant that warrant a downward variance from his well-earned Guideline range.

The defense in their sentencing memorandum also cite to a 2013 Sentencing Commission study analyzing the sentences in non-production child pornography cases to argue that this defendant is similarly situated because of his lack of criminal background and therefore deserves a below guideline sentence. However, there is a United States Sentencing Commission's October 2021 report entitled Federal Sentencing of Child Pornography Production Offenses (hereinafter "Child Pornography Production Report") *See* www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20211013_Production-CP.pdf. This report is more directly on point for this defendant as his crimes involved production. This report is a compilation of data from 2005 through 2019 for production of child pornography offenses across the country. Importantly, the Sentencing Commission found that in the 15-year period studied, the long-term trend shows that "[C]ourts consistently sentence child pornography production offenders to lengthy sentences." *See Child Pornography Production Report* at 21. Indeed, in analyzing the bases for the Courts' imposition of such lengthy sentences, the Sentencing

Commission recognized that "child pornography production offenses are serious crimes that memorialize the sexual abuse and exploitation of children." *Id.* at 54.

The Child Pornography Production Report analyzed a number of cases over the 15-year study period and determined "average" sentences imposed for production offenses.[1] The "average" lengthy sentences imposed for these most egregious offenders are far more than the mandatory minimum sentence the defendant requests:

- an average of 275 months' incarceration for all production crimes (*Id.* at 21-22).
- For those production offenders who also commit child pornography offenses – *like this defendant* – that average is even greater – 289 months' incarceration (*Id.* at 49).
- For those offenders whose victims are prepubescent children – *like this defendant* - the average sentence rose to 292 months incarceration (*Id.* at 46).
- Additionally, those offenders who had closer relationships with their victims the average sentence rose even more, to 340 months for a parent, and 304 months for a relative. *Id.* at 45.

For these most serious crimes the sentences imposed in this district and around the country reflect an understanding of the need for lengthy and significant sentences for these life-altering, horrific crimes against children. Most importantly, a within guidelines sentence is an appropriate term of incarceration based on the facts and circumstances particular to this defendant's most egregious crimes.

### 3. **<u>The seriousness of the offense, respect for the law, and just punishment</u>**

A significant term of imprisonment is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2)(A). This defendant's crimes are among the most serious. And his choice of a victims –two minor

girls who were under his care whom he assaulted and abused while they slept – elevates the seriousness of his offenses. The sentence in this case must promote respect for the laws that the defendant repeatedly violated during the approximate weeklong torture in which he sexually abused the victims and memorialized his horrific misdeeds through photographs and videos and further distributed those images to others online, invited others to share the images of his victims and planned future abuse and inviting others to join in the molestation and abuse. The sentence must make him understand the impact of his crimes. This can only be done by the imposition of a significant sentence of incarceration, one contemplated by the Guidelines in this case. Only a significant prison sentence can adequately punish this defendant, who violated his position of trust with his two victims and violated the laws designed to protect children.

**4. Deterrence and consistency in sentencing**

Deterrence is also one of the factors that calls for a significant sentence of incarceration. The defendant himself needs to be deterred from sexually exploiting children in the future.

Section 3553(a)(2) also mandates that the Court consider a sentence that adequately deters others who would commit similar offenses. The sentence in this case must give notice that the sexual exploitation of children has serious and significant consequences. A long term of incarceration will serve as a deterrent.

**5. Other considerations**

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner… ." § 3553(a)(2)(D). Any drug or mental health treatment that the defendant needs should not mitigate his sentence of incarceration. Those interventions, along with extensive sex offender treatment, can be accomplished while the defendant is serving his

lengthy sentence.

**6. <u>Restitution.</u>**

There has been no request for restitution in this matter.

## V. CONCLUSION

For the reasons set forth above, the appropriate considerations of sentencing favor the imposition of a life-equivalent sentence, one called for by the defendant's calculated Guideline range.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

*s/Brittany Jones*
BRITTANY JONES
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on this date I caused a true and correct copy of the foregoing Sentencing Memorandum to be served via email on the following:

Phillip D Lauer, Esq
Gross McGinley LLP
33 S 7th Street
Allentown, PA 18105

*s/Brittany Jones*
BRITTANY JONES
Assistant United States Attorney

Dated: September 2, 2022